UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

AMICA MUTUAL INSURANCE
COMPANY a/s/o NADINE
PODGURSKI
    Plaintiff,

v.

BRASSCRAFT MANUFACTURING,
COMPANY
    Defendant.

C.A. No. 17-103-JJM-LDA

## ORDER

The above captioned case is a subrogation action. Amica has sued BrassCraft for reimbursement of a claim Amica paid its insured, alleging that BrassCraft's faulty product caused the damages to the insured's home. The problem here is that Amica no longer has the BrassCraft product; Amica lost it before BrassCraft had the opportunity to examine the allegedly failed product. Sophisticated parties who sue— or who expect to sue in the future—are expected to retain relevant evidence. Failure to preserve crucial evidence subjects the party to a variety of sanctions including exclusion of the evidence and the expert's testimony or report based on it, a jury instruction describing the adverse inference a juror can draw from the absence of that evidence, or, in extreme cases, dismissal of the case. Brasscraft seeks dismissal here, arguing that it is unfairly prejudiced by the fact that it faces claims involving one of its products that Amica, through its negligence, failed to turn over and permit BrassCraft to examine. There is no dispute that Amica spoliated the product; the only issue before the Court is what level of sanction the Court should impose.

## FACTS

Amica Mutual Insurance Company paid its insured on her insurance policy after a flood damaged her home in West Warwick, Rhode Island in August 2013. Amica alleges that a BrassCraft flexible water connector disconnected from a toilet fitting in the second floor bathroom, releasing water into the insured's home. Amica's experts, Thomas Zarek and John Certruse, examined the connector and concluded in a September 2013 report that the connector's coupling nut failed because it was under "loading stress" from bending, and that its material contained "void spaces" that "may have reduced the strength under loading on the nut." The experts concluded, "It is likely that the cause of the failure is a combination of the material deficiencies in the plastics, combined with excess stress from the installation conditions." They recommended further testing of the nut.

Two years later in 2015, Amica sent a settlement demand to BrassCraft. BrassCraft responded by asking for proof that the connector was the cause of the damage. Amica did not respond. Instead, a year later, Amica sent another demand with a series of photographs of the connector. BrassCraft again asked for the connector and any expert reports Amica had. Amica responded that it would not ship the connector and did not have an expert report. Both of these statements now appear to be less than truthful. In July of 2016, Amica admitted that it did not have the connector, which it appears to have lost or destroyed.

BrassCraft denied Amica's claim for subrogation so Amica filed this complaint in state court in early 2017; BrassCraft removed it here. In April 2017, Amica's

experts, Messrs. Zarek and Certruse, issued a joint affidavit opining, allegedly based solely on their review of the series of photographs, that BrassCraft defectively manufactured the connector. They did not mention that they had previously rendered the same opinion after examining the actual connector.

BrassCraft now moves to dismiss the complaint, arguing that because Amica spoliated the product it claims was defective before it had a chance to examine it, BrassCraft is prejudiced such that it cannot defend against Amica's subrogation claim. Amica admits that it lost or misplaced the connector, but counters that dismissal is a drastic remedy for spoliation where there is no evidence of malicious destruction, especially since BrassCraft is not prejudiced because its expert can use the pictures and/or get an exemplar connector to examine.[1] Because the Court finds that BrassCraft is left with no way adequately to defend itself against Amica's claims, even though Amica's actions were not malicious, BrassCraft's motion is GRANTED and Amica's case is DISMISSED.

## ANALYSIS

*Rule 37*

At the outset, Amica raises a procedural objection to BrassCraft's motion, arguing that BrassCraft cannot rely on Rule 37 to advocate dismissal for spoliation. The Court disagrees.

---

[1] BrassCraft says, even if an exemplar would suffice, it cannot get an exemplar because it does not make these connectors anymore.

This Court's authority to impose the sanction of dismissal derives from multiple sources in the Federal Rules of Civil Procedure. Amica's failure to produce the connector, evidence that is required to be disclosed to BrassCraft under Rule 26(a)(1), violates Rule 37(c)(1), warranting any of the potential sanctions provided in Rule 37(b)(2)(A)(i)-(vi), which includes dismissal. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii); Fed. R. Civ. P. 37(c)(1)(C); Fed. R. Civ. P. 37(b)(2)(A)(v). A party's failure to produce a product in response to an opposing party's request may violate Rule 37(d), which grants a district court "broad power" to impose sanctions on a party that resists discovery. *See Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 118 (2d Cir. 2009); *see also R. W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 18 n. 7 (1st Cir. 1991) (discussing the availability of sanctions under Rule 37(d) where the written response given is so lacking as to be no response at all). Ultimately, the determination of the appropriate sanction for spoliation is within the Court's discretion, for it to assess based on the facts of the case. See *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). The Court finds no procedural hurdle to applying the rule under which BrassCraft chose to bring its motion.

*Spoliation and the Sanction Therefor*

Amica spoliated evidence in this case; it had notice of the claim or the potential for the claim, the evidence is relevant to the claim, and the evidence was lost and/or destroyed. The only real debate here is over what the Court should do about Amica's loss of crucial evidence.

"While a district court has broad discretion in choosing an appropriate sanction for spoliation, 'the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.'" *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). The Court considers a few factors in determining the appropriate sanction for Amica's spoliation of evidence: (1) whether the defendant was prejudiced because of the loss of the evidence; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the plaintiff was in good faith or bad faith; and (5) the potential for abuse if the evidence is not excluded. *Allstate Ins. Co. v. Creative Env't Corp.*, Civ. No. 92-0467T, 1994 WL 499760, (D. R.I. Apr. 1, 1994) (relying on a five-factor test set forth in *Lewis v. Darce Towing Co., Inc.*, 94 F.R.D. 262, 266-267 (W.D. La. 1982)). "Fairness to the opposing party [] plays a substantial role in determining the proper response to a spoliation motion, and punishment for egregious conduct is not the sole rationale for the most severe sanction of exclusion." *Trull v. Volkswagen of Am., Inc.*, 187 F.3d 88, 95 (1st Cir. 1999).

There is no dispute that the connector was an important piece of evidence in this case. In fact, it is the key piece of evidence that forms the basis of Amica's claim. The rest of the inquiry turns on prejudice, whether it can be cured, and Amica's conduct. Amica argues that BrassCraft has not been prejudiced by not being able to physically examine the nut and coupling because it has provided the high-resolution digital images and BrassCraft's expert can cure the issues he raises in his affidavit

by using an exemplar. But according to BrassCraft's expert's assertions, BrassCraft is unable to mount an effective defense without its expert being able to render opinions after physically examining the connector.

BrassCraft makes the strongest case that it was prejudiced by the loss of the connector and Amica's suggested cures fail to provide an effective antidote. BrassCraft's expert, Mr. Scott Meek of Forensic Engineering, LLC, submitted an affidavit indicating that he could not determine the connector's role in the flood, if any, without physically examining it. He asserts that the pictures Amica provided as a substitute are not clear enough and do not provide an adequate look at the connector. While there appears to be a dispute over the quality of the photographs, (Amica says they are high resolution and BrassCraft says they are unclear and unusable), BrassCraft's expert should not be stuck with pictures that it finds inadequate with no opportunity to take its own pictures to interpret. This is prejudicial. Although Amica's 2015 expert report allegedly is based only on the examination of the photographs, not the connector itself, the fact that these same experts did have the opportunity to study the actual connector and BrassCraft's expert did not, unfairly prejudices BrassCraft. *See Trull v. Volkswagen of Am., Inc.*, 187 F.3d 88, 95 (1st Cir. 1999), *certified question answered*, 145 N.H. 259 (2000) (citations omitted) (the First Circuit upheld the district court's ruling precluding evidence of the condition of seatbelts when the plaintiff was the only one to examine the seatbelts prior to the car being destroyed). Finally, BrassCraft's assertion is correct that it cannot obtain an exemplar because BrassCraft no longer makes that

connector. Neither the pictures nor the exemplar provide an appropriate cure for the prejudice caused by the destruction of the connector.

Amica next argues against the sanction of dismissal because there is no evidence that the loss or destruction was malicious or that it intended to keep the connector from BrassCraft.[2] BrassCraft argues that Amica as an insurance company and frequent subragor should suffer an extreme sanction because, in essence, "it should have known better." Courts have considered the position of the party accused of spoiling the evidence in finding a sophisticated insurance company's spoliation of evidence "reckless." *Northern Assur. Co. v. Ware*, 145 F.R.D. 281, 283 (D. Me. 1993).

There can be no doubt that Amica considered the possibility of seeking subrogation when it had its two experts examine the connector and produce a report on that examination in September 2013–nearly two years before its first settlement demand to BrassCraft and four years before filing suit. It seems reasonable to determine that Amica knew it needed to preserve the connector, as evidence for its subrogation case and its loss of the connector was reckless even if it was not intentional. *Id.* ("Insurance companies are no strangers to litigation, and it seems likely that Plaintiff had litigation in mind when, very soon after the fire, it had its own expert examine the site. The information provided by Plaintiff's expert made the commencement of litigation a distinct possibility, if not a likelihood.")

---

[2] It is possible that one could infer malicious actions by Amica in light of the apparent lack of condor by Amica to BrassCraft's initial inquiries about the connector.

In light of the fact that Amica is an insurance company and in a unique position to be the first in line to collect evidence that may ultimately be relevant to a subrogation case, there is a potential for abuse without a significant sanction for spoliation. The Court cannot permit Amica to lose or destroy evidence, whether recklessly or intentionally, and then later bring a claim for subrogation, forcing a defendant to defend its case without the opportunity to have its expert examine and offer a competing opinion on the evidence.

The Court GRANTS Defendant's Motion to Dismiss. ECF No. 13.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

May 29, 2018